**IN IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| JUSTIN KILLHAM, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SWEEPSTEAKS LIMITED, ADIN ROSS, and AUBREY DRAKE GRAHAM<br><br>*Defendants*. | Case No.: 4:25-cv-00990-GK<br><br>Hon. David Gregory Kays |

**DEFENDANTS ADIN ROSS AND AUBREY DRAKE GRAHAM'S**
**REPLY SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS**

Defendants Adin Ross ("Ross") and Aubrey Drake Graham ("Graham") (together, "Defendants") jointly submit[1] this reply in support of their Motions to Dismiss for Lack of Personal Jurisdiction. Dkt. No. 52 ("Graham Motion"); Dkt. No. 54 ("Ross Motion") (together, "Motions").

## PRELIMINARY STATEMENT

In his Omnibus Suggestions in Opposition to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 56 ("Opposition"), Plaintiff asks the Court to adopt an expansive theory of specific personal jurisdiction that runs counter to Supreme Court and Eighth Circuit precedent. And he does so all while failing to supply any evidence that Graham or Ross purposefully directed their internet content at Missouri or its consumers.

Reflecting Plaintiff's inability to establish that Graham or Ross have any meaningful contacts with Missouri, the Opposition's factual assertions primarily address Sweepsteaks Limited's contacts with Missouri. Plaintiff argues that Graham and Ross purposefully availed themselves of the Missouri market because Sweepsteaks Limited makes its Stake.us platform available in fewer than all 50 states. He asserts that Graham and Ross have an operating market, enforceable contracts, and paying customers in Missouri, but does not identify a single contract or transaction between a Missouri consumer and Graham or Ross, as opposed to Sweepsteaks Limited. Plaintiff's attempt to attribute the contacts of the defendant that has not challenged this Court's jurisdiction to those that have runs counter to the foundational principle that personal jurisdiction depends on each defendant's own contacts with the forum.

Where Plaintiff does address Graham's and Ross's own conduct, even his version of the facts makes clear that neither the Eighth Circuit's five-factor analysis nor the *Calder* effects test support jurisdiction. Plaintiff still cannot identify a single instance of Graham or Ross so much as mentioning,

[1] Given that Plaintiff filed an omnibus Opposition in response to the Motions, Graham and Ross file this consolidated reply in support.

let alone directing their content at, Missouri. He does not argue, and has never alleged, that Graham or Ross ever limited their content to jurisdictions in which Stake.us is accessible. Nor could he. Instead, he insists that because Defendants have millions of followers worldwide, their content must have been intended to influence and impact numerous Missourians. But he provides no factual support for this assertion. The declarations Plaintiff has submitted in support do not help. They only confirm that all Plaintiff can show is that Defendants' content was accessible to millions of viewers around the United States and the world, not that they ever targeted the Missouri market.

In short, Defendants have (1) demonstrated that this Court does not have general jurisdiction over either Defendant, neither of whom can be considered "at home" in Missouri; (2) demonstrated that this Court does not have specific personal jurisdiction over either Graham or Ross because neither Graham nor Ross intentionally directed any content at Missouri (and otherwise have no relevant contacts there); and (3) provided declarations under penalty of perjury categorically denying the few allegations in the Petition that relate to Graham's and Ross's alleged contacts with Missouri. On these grounds and the record before the Court, Plaintiff's claims against Graham and Ross must be dismissed under Federal Rule of Civil Procedure 12(b)(2).

## ARGUMENT

### I. Plaintiff has not made a prima facie case of specific personal jurisdiction over either Defendant.

Rightly recognizing that the Court cannot exercise general jurisdiction over Graham or Ross, Plaintiff focuses his efforts solely on specific jurisdiction. Those efforts fail for three reasons. First, Plaintiff improperly attempts to attribute Sweepsteaks Limited's contacts with Missouri to Graham and Ross. Second, Plaintiff has still failed to show that the nature, quality, and quantity of Graham's or Ross's own contacts with Missouri weigh in favor of exercising jurisdiction. Third, Plaintiff has not shown that Graham's or Ross's content was expressly aimed at Missouri as he must to establish

jurisdiction under the effects test. Plaintiff has therefore failed to make a prima facie case for personal jurisdiction, and the Court must dismiss the Petition under Federal Rule of Civil Procedure 12(b)(2).

### A. The Court should reject Plaintiff's attempt to impute Sweepsteaks Limited's contacts with Missouri to Graham and Ross.

As an initial matter, the Court should reject Plaintiff's attempt to establish specific personal jurisdiction over Graham and Ross by pointing to Sweepsteaks Limited's contacts with Missouri. Doing so would run afoul of the well-established principle that due process allows a defendant to be "haled into court in a forum State" based only "on his own affiliation with the State . . . [not] by interacting with other persons affiliated with the State." *Estate of Logan by and Through Logan v. Busch*, 574 F. Supp. 3d 660, 676 (W.D. Mo. 2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Applying this principle, courts within the Eighth Circuit regularly reject attempts to attribute the conduct of one defendant to another for purposes of personal jurisdiction. *See e.g.*, *Golden Arrow Res., LLC v. Ancestry.com DNA, LLC*, 806 F. Supp. 3d 903, 911 (E.D. Mo. 2025) (refusing to attribute conduct of one defendant to another for purposes of personal jurisdiction); *Logan*, 574 F. Supp. 3d at 676 (personal jurisdiction must be based on defendant's own affiliation with state).

This Court should do the same. Even if Plaintiff is correct that Sweepsteaks Limited's Stake.us platform is highly interactive, has many Missouri customers, and is available in fewer than all 50 states, those facts are relevant at most to whether the Court can exercise jurisdiction over Sweepsteaks Limited, not Graham or Ross. *See Golden Arrow Research*, 806 F. Supp. 3d at 911 (court could not impute one defendant's contacts to another party where party made factual showing that it did not do business under that defendant's name and did not operate that defendant's business). After all, it is Sweepsteaks Limited that Plaintiff alleges "withheld its product from twenty-two States." Opp. at 13.[2] Plaintiff does

[2] Plaintiff asserts that Sweepsteaks Limited's decision to restrict access to its website in certain jurisdictions, but not Missouri, is enough to establish that "Defendants" targeted the Missouri market. Opp. at 7. Plaintiff's failure to cite any

not dispute Graham's and Ross's statements that their content is available around the world.[3] *See generally* Opp. And he does not, and could not, allege that Graham and Ross had anything to do with Sweepsteaks Limited's decision not to restrict access to the Stake.us platform by residents of Missouri or any other state. Plaintiff cannot establish specific jurisdiction over Graham or Ross by pointing to Sweepsteaks Limited's independent decisions about which markets it has chosen not to serve. *See Logan*, 574 F. Supp. 3d at 670. In evaluating the Motions, the Court must therefore disregard Plaintiff's allegations that Sweepsteaks Limited has targeted the Missouri market by failing to block access to its site there.

**B. The Missouri long-arm statute does not permit the Court to exercise jurisdiction over Graham or Ross.**

Plaintiff argues that the Court may exercise personal jurisdiction over Graham and Ross under the Missouri long-arm statute because they "transact[ed] business" and "commit[ted] a tortious act within the state." Opp. at 5 (citing Mo. Rev. Stat. § 506.500.1(1), (3). It cannot.[4]

To fall within the "transacting business" prong of the long-arm statute, a defendant must have "conducted some activity, directly or indirectly related to the transaction in question" in Missouri. *Cepia, LLC v. Universal Pictures Visual Programming Limited*, 177 F. Supp. 3d 1129, 1139 (E.D. Mo. 2016) (citing *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982)). Plaintiff gives this requirement short shrift. He does not identify any transaction between Graham or Ross and a Missouri consumer. Instead, he relies on the global accessibility of their content and their contractual

---

authority for this proposition is reason enough to reject it. It would also eviscerate any limitation due process imposes on the exercise of personal jurisdiction, "effectively mandat[ing] geoblocking for any website operator wishing to avoid suit" in a particular state. *Safex Fdn., Inc. v. SafeLaunch Ventures Limited*, 694 F. Supp. 3d 1, 17–18 (D.D.C. 2023).

[3] It is therefore curious that Plaintiff seeks to distinguish cases cited by Defendants in the Motions on the ground that "they all involve marketing and activity disseminated generally." Opp. at 13.

[4] The Court need not conduct a separate statutory analysis to grant the Motions. As this Court has held, under the Missouri long-arm statute, the jurisdictional analysis "collapses into single due-process-related inquiry," the Eighth Circuit's due process standard for personal jurisdiction. *See Roman v. Affinity Worldwide, LLC*, No. 5:19-CV-06095-DGK, 2020 WL 8339208, at *2–3 (W.D. Mo. Apr. 23, 2020).

arrangements with non-Missouri entities, including Sweepsteaks Limited and Kick.com. *See* Opp. at 6.

The sole authority Plaintiff cites, *Andra v. Left Gate Property Holding, Inc.*, 453 S.W.3d 216 (Mo. banc 2015) provides no support for Plaintiff's expansive reading of the long-arm statute. In fact, in *Andra* the defendant "[did] not dispute that its conduct [fell] within Missouri's long-arm statute." That made sense. The defendant undisputedly engaged in a transaction with the Missouri resident plaintiff: it sold him a car on eBay and delivered it to him in Missouri. *Id.* at 221–223. Moreover, the defendant seller advertised that it would ship vehicles anywhere in the United States, confirming that it "knowingly stood ready and willing to do business with Missouri residents," and had shipped several cars to Missouri buyers. *Id.* at 229. Here, on the other hand, Plaintiff has not, and cannot, identify a single case-related transaction between Graham or Ross and a Missouri consumer or any indication that they, rather than Sweepsteaks Limited, were "ready and willing," *id.*, to engage in such transactions.

The long-arm statute's tortious acts prong likewise cannot confer personal jurisdiction here. To establish jurisdiction under this prong, a plaintiff must show that the defendant could reasonably foresee that the allegedly tortious conduct would have consequences in Missouri. *Myers v. Casino Queen Inc.*, 689 F.3d 904, 910 (8th Cir. 2012). A Missouri plaintiff's reliance on representations by an out-of-state defendant and a resulting injury does not establish foreseeability under the tortious acts prong. *See State ex rel. PPG Indus., Inc. v. McShane*, 560 S.W.3d 888, 891 (Mo. 2018). Even taking Plaintiff's declaration, that is all he has alleged here. *See* Killham Decl. ¶¶ 4–8 (stating that Plaintiff watched Graham's and Ross's content and personally saw the alleged misrepresentations). Because all Plaintiff has shown is that he saw alleged representations on a website that was "not directed to Missouri consumers," the Court cannot exercise personal jurisdiction under the long-arm statute's tortious acts prong. *See McShane*, 560 S.W.3d at 891.

### C. Graham and Ross do not have sufficient contacts with Missouri to make specific jurisdiction proper under the Eighth Circuit's five-factor framework.

Plaintiff's attempts to shift the focus to Sweepsteaks Limited's conduct is understandable because the "nature, quality, and quantity" of Graham's and Ross's own contacts establish that the Court cannot exercise specific personal jurisdiction here. After nearly a year of litigation, Plaintiff still has not identified a single fact suggesting that Graham's or Ross's marketing efforts were "actively, exclusively, or even predominantly targeted at [Missouri] customers" *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 824 (8th Cir. 2014). He therefore cannot establish that Graham or Ross are subject to specific personal jurisdiction in Missouri.

Plaintiff's argument to the contrary relies on a misapplication of Supreme Court and Eighth Circuit precedent, readily distinguishable (and non-binding) out-of-circuit cases, and unsupported factual assertions. Starting with binding precedent, courts have repeatedly recognized that, in the Eighth Circuit, making even a highly interactive web platform available to "anyone who seeks it out, regardless of where they live" does not establish purposeful availment. *Allied Ins. Co. of Am. v. JPaulJones L.P.*, 491 F. Supp. 3d 472, 476 (E.D. Mo. 2020); *see e.g.*, *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 953 (8th Cir. 2022) ("*BASIC*") (no jurisdiction where Missouri consumer accessed nationally available website and made purchase); *Stifel Nicolaus & Co., Inc. v. Sapient Cap., LLC*, No. 4:23-cv-00241-MTS, 2024 WL 1014069, at *5 (E.D. Mo. Mar. 8, 2024) (no jurisdiction where statements were "disseminated in Missouri" through nationally accessible website and social media). Because all Plaintiff has alleged is that Missouri residents viewed Graham's and Ross's globally accessible content, the nature, quality, and quantity of their contacts with Missouri weigh against specific personal jurisdiction. *See BASIC*, 42 F.4th at 953.

As courts in the Eighth Circuit have recognized, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) does not suggest otherwise. In *Keeton*, the Supreme Court found that a magazine publisher

could be called to New Hampshire because it circulated "10 to 15,000" copies of its magazine to subscribers in New Hampshire each month. 465 U.S. at 772. This evidence supported a finding that the corporate defendant had "systematically exploited the New Hampshire market," providing the minimum contacts required to justify the exercise of personal jurisdiction. *Carlock v. Pillsbury Cop.*, No. Civ. 4-87-586, 1988 WL 404838, at *5 (D. Minn. Jan. 4, 1988). Plaintiff has presented no evidence that Graham or Ross targeted or otherwise benefited from Missouri consumers in any way, let alone in a fashion comparable to the "10 to 15,000" monthly publications in *Keeton*. *See* 465 U.S. at 772.

In search of support for Plaintiff's expansive theory of personal jurisdiction, Plaintiff points to the Ninth Circuit's decision in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011). In *Mavrix*, the Ninth Circuit found that a company and its CEO were subject to specific personal jurisdiction in California because the celebrity gossip website they ran "used [plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. But even *Mavrix* does not go as far as Plaintiff suggests, and it is readily distinguishable for two reasons in particular.

*First*, the defendants in *Mavrix* were a corporate entity and its CEO operated a website which targeted the California market. *Id.* at 1222. They are therefore distinct from Graham and Ross, who are individuals and have never targeted Missouri with their content. *See generally* Graham Decl. ¶¶ 5–8, Dkt. No. 52-1; Ross Decl. ¶¶ 4-8, Dkt. No. 55-1.

*Second*, the Ninth Circuit's decision in *Mavrix* does not suggest that a court can exercise jurisdiction when an entity or individual with a "national audience" has *any* contact with a particular forum. Instead, as the court explained, even if the *Mavrix* defendant did not "market[] its website in California local media," it was clear that the defendant "operated a very popular website *with a specific focus on the California*-centered celebrity and entertainment industries." *Id.* at 1230. The court further explained that "[b]ased on the website's subject matter, as well as the size and commercial value of the

California market . . . Brand anticipated, desired, and achieved a substantial California viewer base," as an "*integral component* of Brand's business model and its profitability." *Id.* Supporting this analysis were the defendants' "specific ties to California," which included, among others: (1) agreements with several California businesses; (2) having a "California wireless provider" design and host a mobile version of defendants' website; (3) having a "California firm" design and maintain the website; and (4) entering into a "link-sharing" agreement with a California-based news site. *Id.* at 1222.

Graham's and Ross's alleged promotion of Stake.us through globally accessible social media is plainly distinguishable from the "specific focus" the Ninth Circuit relied on in *Mavrix*. Nothing in the Petition, the Opposition, or the Declarations suggests that Missouri is a market of significant commercial value to Graham or Ross, that Graham or Ross has any agreement with any Missouri-based entity or individual, or that Graham or Ross otherwise took any action or had any relationship with Missouri aside from their content being accessible there. To the contrary, even Plaintiff repeatedly emphasizes Graham's and Ross's large, global audiences. *See e.g.*, Pet. ¶¶ 52, 54–57; Opp. at 3, 9.

Finally, *Mavrix* is not binding on this Court. And even if persuasive, it does not outweigh the binding decisions Graham and Ross cite above or the numerous out-of-Circuit cases rejecting jurisdiction in the absence of targeting. *See e.g.*, *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022); *Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021).

That leaves Plaintiff's unsupported factual assertions, many of which appear for the first time in the Opposition. Take Plaintiff's allegations regarding streaming revenue. In the Opposition, Plaintiff asserts that Drake and Graham are "handsomely compensated in proportion to the audience they deliver, and a share of the subscription revenue they earn on Kick.com comes from Missouri subscribers." Opp. at 6 (citing Pet. ¶¶ 54–55). Neither of the paragraphs Plaintiff cites from his own Petition allege such facts. Likewise, Plaintiff now argues that Graham and Ross promoted Stake.us "knowing and intending that some of the promotion will reach Missouri residents," Opp. at 8,

something he does not allege in the Petition. Finally, Plaintiff's assertion that Graham and Ross enjoy "an operating market, enforceable contracts, and paying customers," *id.* at 9, reflects, at best, a failure to distinguish between Sweepsteaks Limited's conduct and Graham's and Ross's. Once again, Plaintiff has not alleged or a single contract or transaction between Graham or Ross on one hand and a Missouri resident on the other.

### D. The effects test does not support specific personal jurisdiction here.

Plaintiff appears to disclaim reliance on the effects test, Opp. at 13, and for good reason. The effects test requires that, to establish specific jurisdiction, a defendant's alleged tortious acts must be expressly aimed at the forum. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). Put differently, the defendant's act must be "performed for the very purpose of having its consequence felt" in the forum state. *Id.* Plaintiff has not and cannot show that Graham or Ross ever mentioned Missouri, let alone "uniquely or expressly aimed" their content at Missouri. *Id.* Even in his declaration, he asserts only that he decided to play games on the Stake.us platform after seeing Graham's and Ross's content while in Missouri, not that the content he viewed was tailored to Missouri in any way. *See* Killham Decl. ¶¶ 4–8. Absent such express aiming, he alleges no more than "mere effects" in Missouri, which, without more, cannot establish specific personal jurisdiction. *Johnson*, 614 F.3d at 797.

## II. Plaintiff is not entitled to jurisdictional discovery.

Perhaps conceding that they have not met their burden, Plaintiff requests that this Court grant Plaintiff leave to conduct jurisdictional discovery and defer ruling on the Motions until discovery is complete. Opp. at 14. However, this Court *has already ruled* that Plaintiff is not entitled to jurisdictional discovery. *See* Order Partially Lifting Stay, Dkt. No. 51. Because the facts necessary to resolve the Motions are neither unknown nor disputed, the Court should reject this request to reconsider its ruling.

As discussed in detail above, Plaintiff has not established a prima facie case for personal

jurisdiction. Moreover, Plaintiff has not addressed the evidence Graham and Ross presented which supports a lack of personal jurisdiction, aside from arguing that the statements in Graham's and Ross's declarations are irrelevant. Opp. at 9–10. To the contrary, the evidence Plaintiff has presented is either irrelevant (because it describes Sweepsteaks Limited's or Plaintiff's conduct) or unhelpful to his case for jurisdiction (because it shows that Graham and Ross have not deliberately targeted Missouri).

Plaintiff does not meaningfully dispute the relevant jurisdictional facts, only their legal consequences. In this year of litigation, Plaintiff has not identified a single piece of content that Graham or Ross directed at Missouri or even facts that suggest such content might exist. He does not deny that Graham's and Ross's content is available to a broad, global audience, that Graham and Ross have not entered into Stake-related contracts with Missouri residents, or that Graham and Ross never tailored their content to the Missouri market. And none of Plaintiff's documentary evidence "provides any inference of additional contacts" that Graham or Ross might have with Missouri. *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1036 (N.D. Iowa 2013).

Instead, Plaintiff presents an unworkably expansive reading of the Supreme Court's and the Eighth Circuit's personal jurisdiction jurisprudence, declares that he has made a prima facie case against Graham and Ross, and then asks for discovery to prove what he did not (and could not) allege in the Petition. The Court is not required to—and should not—grant this request. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (district court has discretion in determining whether to permit jurisdictional discovery); *Regenexx, LLC v. Regenex Health LLC*, 446 F. Supp. 3d 469, 476 n.3 (S.D. Iowa 2020) (denying jurisdictional discovery where plaintiff's evidence failed to rebut assertions in the defendant's declaration).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against Graham and Ross under Federal Rule of Civil Procedure 12(b)(2).

Dated: October 9, 2026

Respectfully submitted,

By: */s/ Steven C. Henricks*

**GOOSMANN LAW FIRM**

Steven C. Henricks, #51566
17838 Burke Street, Suite 250
Omaha, NE 68118
Tel. 402.282.8538
henrickss@goosmannlaw.com

**IFRAH PLLC**

A. Jeff Ifrah (*pro hac vice*)
Robert W. Ward (*pro hac vice*)
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jeff@ifrahlaw.com
rward@ifrahlaw.com

*Counsel for Defendant Aubrey Drake Graham*

**MARGULIS, GELFAND, DIRUZZO & LAMBSON LLC**

Justin K. Gelfand
7700 Bonhomme Avenue
Suite 750
St. Louis (Clayton), Missouri 63105
P: 314.390.0230
F: 314.485.2264
justin@margulisgelfand.com

**NEIMAN MAYS FLOCH & ALMEIDA PLLC**

Jeffrey A. Neiman (pro hac vice forthcoming)
Brandon S. Floch (pro hac vice forthcoming)
Christopher D. Joyce (pro hac vice forthcoming)
550 S. Andrews Ave, Suite 720
Fort Lauderdale, Florida 33301

Phone: (954) 462-1200
jneiman@nmfalawfirm.com
bfloch@nmfalawfirm.com
cjoyce@nmfalawfirm.com

*Counsel for Defendant Adin Ross*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2026, I filed the foregoing document using the Court's CM/ECF system, which served a copy upon all counsel of record by electronic mail.

*/s/ Steven C. Henricks*
Steven C. Henricks, #51566